CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED
AUG 21 2008
JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| PAMELA A. REESE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 6:07cv022 |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) |
| Defendant | ) |

### REPORT AND RECOMMENDATION

Plaintiff Pamela A. Reese ("Reese") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits under the Social Security Act ("Act"). Reese has suffered from Erb's palsy[1] of her right arm since birth. Despite these problems with her right arm, Reese, now 54 years old, has been able to work at a variety of jobs for many years until 2002. Reese bases her claim for disability on deterioration of the condition of her right arm and on numbness and cramping problems with her left hand that arose in 2002. While the medical evidence in this case is fairly straightforward and well documented, the vocational evidence is quite the contrary. The Administrative Law Judge ("ALJ") concluded based on the testimony of an independent vocational expert ("VE") that Reese could return to her past relevant work in three clerk positions at the light exertional level, but this conclusion is not supported by substantial evidence for two reasons. First, review

---

[1] As described by Reese's treating neurologist, her condition is a "traction injury of the upper brachial plexus. Because of this, she has had severe weakness and discomfort in the right arm." (Administrative Record, hereinafter "R." at 340)

of the transcript of the administrative hearing reveals that significant portions of the testimony of the VE concerning Reese's ability to perform her past relevant work are inaudible.[2] On this incomplete and inadequate record, there is no way for a reviewing court to engage in meaningful review of the vocational evidence in this case. Second, even if one attempts to read the outline of the VE's testimony from the remnants of the VE's testimony that remain, it is clear that the hypothetical questions posed by the ALJ all reflect occasional reaching, handling and fingering of the right upper extremity, a premise which is flatly inconsistent with the medical evidence and Reese's uncontroverted testimony that by 2002 the palsy of her right arm has deteriorated to the point where she could not lift her right arm or use it to perform any work. As such, the Commissioner's decision is not supported by substantial evidence.

It is **RECOMMENDED**, therefore, that the plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED,** and the case be **REVERSED** and **REMANDED** for further administrative proceedings consistent herewith.

## I.

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v.

---

[2]The testimony of the VE as regards Reese's ability to perform her past relevant work is contained on pages 107-09 of the administrative record. Twenty eight (28) times on those three pages, portions of the transcript bear the notation "[INAUDIBLE]." Indeed, at the bottom of page 108, the entire answer to one of the hypothetical questions posed by the ALJ is noted as being [INAUDIBLE].

2

Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an

impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"),[3] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Reese, born in 1953, was 50 years old on her amended onset date of December 8, 2003. Reese had a tenth grade education and never obtained a GED or other formal education. Reese worked in a variety of jobs over the past fifteen years including cashier at a market, counter clerk at a glass company, cashier at a fabric store and a convenience store clerk. Reese claims that by 2002 the palsy of her right arm had progressed, causing her not to be able to grasp objects with

---

[3] RFC is a measurement of the most a claimant can do despite his limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after he considers all relevant evidence of a claimant's impairments and any related symptoms (e.g. pain). See 20 C.F.R. § 404.1529(a).

4

her right hand or lift her right arm. Reese testified at the administrative hearing on April 18, 2006 that although she worked up until May, 2002, by then the palsy of her right arm had progressed to a point where she had muscle spasms and pain and "couldn't lift it any more. I can't pick things up. I can't turn it. I couldn't give money back. I couldn't stock shelves. I couldn't do any of the tasks that I needed to do. I can't raise my arm." (R. 87) Reese also contends that she stopped working in May, 2002 because of symptoms in her left dominant hand, including cramping and numbness, due to carpal tunnel syndrome.

The majority of Reese's health care has been rendered by her primary care physician, Dr. Suzanne Krzyzanowski, of Village Family Physicians, Inc., who in turn referred Reese to an orthopedist, Dr. George D. Henning, and a neurologist, Dr. Bashir K. Ahmad.

Reese was first seen first by Village Family Physicians on May 1, 2003. At that time, Reese complained of increasing pain in her palsied right arm. The medical records reflect that "she finds that she is not able to work as she does not have a lot of education and most manual jobs require 2 functional arms." (R.298) This first treatment note makes no mention of any problem with Reese's left arm or hand. The same is true of the next treatment note dated July 9, 2003. (R. 297)

After these two visits, Dr. Krzyzanowski completed a Multiple Impairments Questionnaire on October 11, 2003. (R. 321-28) While Dr. Krzyzanowski's assessment contains significant limitations concerning Reese's right arm, there are no limitations mentioned in this report concerning Reese's left arm or hand. The physical limitations assessment completed by Dr. Krzyzanowski restricted Reese to standing/walking six hours and sitting six hours in an eight hour work day. (R. 260) Dr. Krzyzanowski also opined that Reese could not lift any amount of

5

weight and could only carry 0-5 lbs. occasionally. (R. 324) Dr. Krzyzanowski noted that the "[p]atient's main problem besides pain is that she has very limited use of entire R upper extremity." (R. 324) Marked limitations were noted in grasping, turning twisting objects, using fingers/hands for fine manipulation, and reaching as regards her right upper extremity. No such limitations were noted as regards the left arm. (R. 325) As primary symptoms, Dr. Krzyzanowski noted "pain, loss of range of motion – progressive, [and] weakness R arm (patient R side dominant)" (R. 322) In a letter to disability counsel dated June 1, 2004, Dr. Krzyzanowski again noted that Reese was right hand dominant, concluding that "I do believe that the patient is unable to perform full time competitive work in a normal job environment because of pain and limitation in the use of her dominant arm." (R. 332)

Dr. Krzyzanowski referred Reese to both an orthopedist and a neurologist. The orthopedist, Dr. Henning, had no treatment to offer Reese other than a possible switch of pain medications, noting "[s]he is 50 years old and it really appears to me like a symptom that is not unlike post polio syndrome in that the muscles that have been spared or partially damaged have reached the point where they are no longer strong enough to do the function they used to before. From talking to her, I don't think there has been any dramatic change in her symptoms. Her symptoms also include pain." (R. 329) There is nothing noted in Dr. Henning's examination about Reese's left side except "[g]ood motion in the left shoulder." (R. 329) Dr. Henning did not see Reese again.

Reese was treated by Dr. Ahmad, a neurologist, from 2004 through 2006. At her first visit, Dr. Ahmad noted recent exacerbation of her right side brachial palsy, but "no problems with the left upper or bilateral lower extremities." (R. 336-37) Dr. Ahmad performed a nerve

6

conduction ("NCS") study on July 12, 2004 on Reese's right and left arms and a electromyography ("EMG") of her right arm. The test report is frankly confusing, and as made clear in later medical records, simply erroneous. It first notes mild bilateral carpal tunnel syndrome, worse on the left. It then states notes a "chronic and stable neurogenic process in the left upper extremity." (R. 334) Dr. Ahmad corrected this apparent error in his note of a follow up visit on February 15, 2005, when he stated that the EMG study of the "right upper extremity revealed multi-level, chronic neurogenic changes predominantly over the C5-6 levels." (R. 341) On this date, Reese complained that her right arm was a bit worse and that she could not even lift one pound with it. Dr. Ahmad noted that tingling, numbness and other paresthesias[4] continue and are slightly worse in the right arm, and that she could not elevate the right arm above horizontal. (R. 341) Nothing was noted concerning the left arm during the examination.

Reese was seen twice more by Dr. Ahmad, in February and August, 2006. In February, Dr. Ahmad noted a pulling sensation and pain in her right arm and that "[s]he cannot lift her right arm anymore unless she helps it with the left arm." (R. 368) On examination, Dr. Ahmad noted that "[s]trength was normal in the left upper and bilateral lower extremities. Recently she had been complaining of some paresthesias in the left hand with exacerbation at night. She did not have any Tinel's sign over the median nerve and she had normal hand grip in the left." (R. 368)[5] On her last visit with Dr. Ahmad in the record, Dr. Ahmad noted that Reese was developing

---

[4] Paresthesia is an "abnormal touch sensation, such as burning, prickling, or formication, often in absence of an external stimulus." Dorland's Illustrated Medical Dictionary, 30th Ed., 2003, at 1371.

[5] Tinel's sign is "a tingling sensation in the distal end of a limb when percussion is made over the site of a divided nerve. It indicates a partial lesion or the beginning regeneration of the nerve." Dorland's Illustrated Medical Dictionary, 30th Ed., 2003, at 1703.

7

tendinitis of the left thumb, and that "[t]here is no clinical evidence of carpal tunnel syndrome." (R. 367)

In a summary letter to disability counsel dated July 18, 2005, Dr. Krzyzanowski noted the treatment and findings of Drs. Henning and Ahmad and concluded as follows:

> Given that the patient is right hand dominant, she has chronic pain when she uses the arm, and her left hand is also affected by carpal tunnel syndrome, I really don't see that she can perform in any of the types of jobs she would be qualified otherwise to do. She has always worked in jobs such as cashier and manual labor and without the use of that arm it will not be possible to function in such a capacity. We have all encouraged her to exercise that arm as much as possible, do her physical therapy exercises on it, so that she maintains what little range of motion she has so she can at least be able to dress herself and bathe herself without assistance; but otherwise I do not think she can function in a job and should be considered permanently disabled.

(R.344)

On July 25, 2005, Dr. Krzyzanowski completed a Bilateral Manual Dexterity Impairment Questionnaire. This form largely tracked the October, 2003 Multiple Impairments Questionnaire, with a few relatively minor differences. First, the form reflected for the first time some issues with Reese's left hand. It noted bilateral carpal tunnel syndrome, tenderness in the left hand, and minimal limitations on using her left hand for fine manipulations. (R. 346, 350) The form also noted that Reese could lift up to 10 pounds occasionally and carry up to five pounds occasionally. (R. 348) Dr. Krzyzanowski added to this report that Reese "can't work an 8-hour day." (R. 350)

Reese was seen at Village Family Physicians on November 10, 2005 complaining of right increased right arm pain and anxiety. (R. 364) Reese was prescribed some medication for anxiety and depression and these symptoms improved somewhat by her next visit on February 6,

8

2006. (R. 363) On April 24, 2006, Dr. Krzyzanowski responded to a letter from disability counsel concerning limitations in Reese's left hand. At that time, Dr. Krzyzanowski wrote that "I have not evaluated Ms. Reese's left hand recently. Based on what I remember from the past, I would think that she could lift 10 lbs on a rare basis and 5 lbs on an occasional but not repetitive basis." (R. 353)

Reese was seen by Dr. Kathryn L. Humphreys of Village Family Physicians on August 10, 2006 and January 16, 2007. On August 10, Dr. Humphreys wrote that "[s]he is having increasing symptoms from her Erb palsy and thinks she may need to go on disability. She may not be able to continue working in a convenient store. She also has chronic pain secondary to the same." (R. 373) The August, 2006 examination focused almost exclusively on Reese's right shoulder and arm problems and possible assistance from an occupational therapist. Although there is no specific mention of right or left arm, the note says there is "some carpal tunnel syndrome as well." (R. 373) In the January, 2007 note, Dr. Humphreys wrote that "[s]he continues to do poorly and not work because of her R hand not being able to work at all. Her left hand has tendinitis and still causes her chronic pain." (R. 371) On examination, Dr. Humphreys noted no wasting of the musculature of her left hand, although she made mention of dampness of her palm and some tenderness of her extensor tendon of the thumb. (R. 371)

In determining whether Reese was disabled under the Act, the ALJ found that she suffered from severe residual limitations from congenital Erbs palsy of the right upper extremity. (R. 19) Despite this finding, however, the ALJ found that Reese did "not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20

9

CFR Part 404, Subpart P, Appendix 1." (R. 20) The ALJ found that Reese had the RFC to perform a wide range of light work. (R. 21) The ALJ found that:

> The claimant has the residual functional capacity to lift and carry up to 10 pounds, stand/walk at least 6 hours in an 8-hour day, and limitations to her non-dominant right upper extremity resulting in only occasional reaching, handling or fingering. She could not crawl, climb, push, or pull with right upper extremity. She has no functional limitations in her dominant left upper extremity.

(R. 20) In making this determination, the ALJ found that although Reese's primary care physician, Dr. Krzyzanowski, opined several times that she was not capable of working, these opinions were rooted in Dr. Krzyzanowski's belief that Reese suffered from Erb's palsy in her right dominant hand, when, in fact, Reese is left handed and had no functional limitations in that hand. (R. 21-22) The ALJ noted that the Appeals Council remanded the case with the specific direction to determine whether Reese was right or left-handed, and "she testified that she is left-handed." (R. 22) The ALJ noted that Dr. Krzyzanowski repeatedly noted in Reese's medical records that Reese's palsied right arm was dominant and did not otherwise support her opinion that Reese could not work. The ALJ concluded that Reese "has no problems standing, walking, sitting, hearing, seeing, or following directions. She has limitations in the right upper extremity to which the undersigned gave full consideration and, which having been diagnosed with "Mild" left carpal tunnel syndrome, there is no evidence of diminished grip strength, atrophy, or limitation of motion in that, the real **dominant** upper extremity." (R. 23) (emphasis in original)

### III.

At the administrative hearing on April 18, 2006, the ALJ asked the VE a series of hypothetical questions concerning Reese's ability to return to any of the three light unskilled jobs

10

she previously held, clerk/cashier, counter clerk, and retail sales clerk. This portion of the administrative record, pages 107-09, is so fraught with references to portions of the testimony being "[INAUDIBLE]" that it is impossible to parse. In all, over just these three key pages of the record, there are 28 portions of the testimony which were deemed by the transcriber to be "[INAUDIBLE]." The answer to one complete hypothetical question is missing as being inaudible. It is very difficult, if not impossible, to try to determine with any reasonable certainty the specific contours of the VE's testimony. As such, the undersigned cannot find from this incomplete transcript that substantial evidence supports the ALJ's conclusion that Reese can return to her past relevant work. See Russell v. Sullivan, 914 F.2d 1492 (4th Cir. 1990) (holding substantial evidence does not exist when critical testimony from a vocational expert is inaudible).

## IV.

An ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. 20 C.F.R. § 404.1527(d). A treating physician's opinion is to be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527 (d)(2); Social Security Ruling 96-2p. The ALJ is to consider a number of factors which include whether the physician has examined the applicant, the existence of an ongoing physician-patient relationship, the diagnostic and clinical support for the opinion, the opinion's

11

consistency with the record, and whether the physician is a specialist. 20 C.F.R. § 404.1527. A treating physician's opinion cannot be rejected absent "persuasive contrary evidence," and the ALJ must provide his reasons for giving a treating physician's opinion certain weight or explain why she discounted a physician's opinion. Mastro, 270 F.3d at 178; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); SSR 96-2p ("the notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.").

The ALJ rejects Dr. Krzyzanowski's opinion largely because of her repeated references to Reese's palsied right arm as being her dominant one, a point emphatically made on pages 22 and 23 of the record. While there is some apparent confusion in the medical records as to which of Reese's arms is the dominant one, there is no dispute in the record that the palsy in her right arm has progressed to the point where she could not use it at all. Dr. Krzyzanowski stated that Reese had very limited use of her right arm, with marked limitations in grasping, turning or twisting objects, using fingers/hands for fine manipulation, and reaching as regards her right upper extremity. (R. 325) Dr. Henning, treating orthopedist, stated that the damaged muscles in her right arm "have reached the point where they are no longer strong enough to do the function they used to before." (R. 329) Dr. Ahmad, treating neurologist, stated that Reese "cannot lift her right arm anymore unless she helps it with the left arm." (R. 368) The last doctor to see Reese, Dr. Humphreys, observed that Reese's right hand did not "work at all." (R. 371)

12

Given these consistent observations from Reese's treating doctors as to her inability to use her right arm, there is no basis for the ALJ to find that she could use her right arm for occasional reaching, handling or fingering. Likewise, even if one is able to follow a trail of bread crumbs through the forest of "[INAUDIBLE]" responses and make some sense out of the ALJ's examination of the VE as to her past relevant work, there is no basis in the medical evidence for the ALJ to include occasional use of the right arm in the hypothetical question.[6] An appropriate RFC in this case must reflect the undisputed medical evidence which concludes that Reese cannot, even occasionally, use her right upper extremity. Accordingly, the undersigned finds that the ALJ's opinion is not supported by substantial evidence and must be reversed and remanded under sentence four of 42 U.S.C. §405(g). On remand, the Commissioner must determine what, if any, work that Reese can perform based on her inability to use her right hand at all and the functional limitations posed by the tendinitis or carpal tunnel in her left hand.

For these reasons, it is **RECOMMENDED** that the plaintiff's motion for summary judgment be **GRANTED**, the Commissioner's motion for summary judgment be **DENIED,** and the case be **REVERSED** and **REMANDED** for further administrative proceedings consistent herewith.

---

[6]An ALJ must take into account all the specific limitations of a claimant when crafting a hypothetical question to a VE. Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989). Otherwise, the relevance and value of the VE's testimony is greatly diminished. Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2006) (quoting Walker, 889 F.2d at 50). Failure to consider all the claimant's functional limitations and then relying upon an incomplete hypothetical when reaching a judgment constitutes an error of law. Hancock v. Barnhart, 206 F. Supp. 2d 757, 767 (W.D.Va. 2002).

## V.

The Clerk is directed to transmit the record in this case to Norman K. Moon, United States District Judge and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within ten (10) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

The Clerk is directed to transmit a copy of this Report and Recommendation to counsel of record.

ENTER: This 21st day of August, 2008.

Michael F. Urbanski
United States Magistrate Judge